UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS D., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) )  No. 4:25 CV 126 JMB |
| FRANK BISIGNANO, Commissioner of Social Security Administration,[1] | ) ) ) ) ) |
|     Defendant. | ) ) |

**MEMORANDUM AND ORDER**

On November 16, 2021, Plaintiff Nicholas D. filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 301, *et seq.*, alleging that his disability began on August 10, 2021 because of Major Depressive Disorder, social anxiety, general anxiety, panic attacks, and Bipolar Disorder with mixed features. (Tr. 199, 288). On December 6, 2024, the Commissioner of Social Security issued a final decision denying Plaintiff's claim (Tr. 1-7). See 42 U.S.C. § 405(g). There is no dispute that Plaintiff exhausted his administrative remedies. Accordingly, this matter is now before the Court for review of an adverse ruling by the Social Security Administration as set forth by the Administrative Law Judge (ALJ). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Standard of Review and Legal Framework**

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano is hereby substituted for Michelle King as the defendant in this action. Nothing further is necessary to continue this action as set forth in the last sentence of 42 U.S.C. § 405(g). The Clerk of Court is hereby directed to modify the docket sheet to reflect this change.

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Ross v. O'Malley, 92 F.4th 775, 778 (8th Cir. 2024). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (quotation omitted); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (the standard "is not high"). In making this determination, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007); see also 20 C.F.R. § 404.1520 (setting forth the five-step sequential evaluation process an ALJ uses to determine whether a claimant is disabled); Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (discussing the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow, and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (citing Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Similarly, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). If it is possible to draw a position from the evidence that supports the ALJ's findings, the reviewing court must affirm the decision. Id. With this standard in mind, the Court will address the specific arguments made by the parties.

## II. Discussion

Plaintiff argues that the ALJ erred in assessing his Residual Functional Capacity (RFC) by failing to appropriately consider his social anxiety in determining that he was capable of performing a full range of work with some non-exertional limitations.

A claimant's RFC is the most he can do in a work setting despite his limitations. Schmitt v. Kijakazi, 27 F.4th 1353, 1360 (8th Cir. 2023) (citing 20 C.F.R. § 404.1545(a)(1)).  When determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints.[2]  Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005).  In doing so, the ALJ should consider the claimant's prior work record and third-party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  Grindley v. Kijakazi, 9 F.4th 622, 630 (8th Cir. 2021); Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is not mechanically obligated to discuss each of the above factors; however, when rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination, that is based on substantial evidence, detailing his or her reasons for discrediting the testimony.  Grindley, 9 F.4th at 630-631; Vick v. Saul, No. 1:19 CV 232 CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19, 2021) (citing Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012).  On review by the court, "[c]redibility determinations are the province of the ALJ." Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016)).  The court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility."  Id.

At Step 2 of the sequential process, 20 C.F.R. § 404.1520(a)(4)(ii), the ALJ found that Plaintiff's mental health conditions, major depressive disorder, generalized anxiety disorder, and personality disorder, are severe impairments (Tr. 22).  The ALJ elaborated the extent to which

---

[2] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929; Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020).

Page **3** of **9**

Plaintiff's mental health affected broad functional areas of mental functioning outlined in the regulations. 20 C.F.R., Part 404, Subpart P, App. 1. These four functional areas, known as "Paragraph B" criteria, are understanding, remembering and applying information; interacting with others; concentrating, persisting, or maintaining pace; and, adapting or managing oneself. See 20 C.F.R. § 404.1520a(c)(3). The ALJ found that Plaintiff only had moderate limitations in these functional areas in light of medical examination findings and his activities of daily living which include preparing meals, household chores, and caring for an ill aunt (Tr. 22-24).

The ALJ then appropriately indicated that these findings, as to Plaintiff's mental health, only relate to the severity of Plaintiff's conditions and are not a "residual function capacity assessment" that would require a more "detailed assessment." Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018) ("As a practical matter...the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized."); Wymer v. Saul, 4:19-CV-2616-MTS, 2021 WL 1889870, * 9 (E.D. Mo. May 11, 2021). Plaintiff does not challenge the ALJ's finding that his mental health conditions result in only moderate functional limitations at Step 2 of the sequential process.

In addressing Plaintiff's RFC, between Steps 3 and 4, the ALJ noted that he considered the entire record in formulating the RFC that Plaintiff can perform a full range of work at all exertional levels with certain non-exertional limitations (Tr. 24). The ALJ identified and set forth in detail Plaintiff's statements of the effects of his mental condition both from his medical records, disability forms, and the hearing (Tr. 25-27). Plaintiff stated that his anxiety and panic attacks caused a variety of symptoms including: difficulty filling out paperwork, inability to get out of bed, sleeplessness and sleeping too much, difficulty with personal care, difficulty getting along

with others, difficulty focusing and speaking, lack of attention, concentration, and memory, and paranoia, among other things. He had panic attacks a couple of times a week with sweating, nausea, crying, and difficulty speaking (Tr. 26). Plaintiff stated that the only way he could cope with panic attacks was by "disengaging completely" (Tr. 25). He tried medications and treatments that were unsuccessful in treating his symptoms (Tr. 26). The ALJ then noted Plaintiff's daily activities including: occasional laundry, simple meals, driving, going out alone, watching TV and listening to music, talking to a friend, and communicating with friends through calls and texts, among other things. At the hearing, Plaintiff testified that on a typical day, he ate and slept (14-16 hours a day), barely did household chores, and did not do much else (Tr. 26). He also believed he could live by himself if not for the financial burden (Tr. 26).

In finding that the Plaintiff' statement of the debilitating effects of his condition were not credible, the ALJ indicated that:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the medical evidence and the claimant's functioning are inconsistent with the limitations alleged. There is little evidence of panic attacks with physical symptoms including difficulty communicating, sweating, or nausea in exams. He was occasionally tearful but there is no evidence of uncontrolled crying spells due to panic attacks. The evidence does not support the claimant sleeping 14 or more hours a day, nor does the evidence support an inability to perform household chores. The claimant indicated that he was the primary caregiver for his ill aunt and assisted her with medical appointments and physical activities. The evidence also does not show poor hygiene and grooming consistent with his statements that he did not shower or change his clothes regularly.

(Tr. 26). The ALJ then outlined Plaintiff's medical records, pointing out findings that both supported and detracted from Plaintiff's statements of disabling symptoms (Tr. 26-29). The ALJ also identified agency doctors Mark Altomari and Marsha Toll as opining that Plaintiff had moderate limitations in mental functioning and could perform simple work with limited interaction with others (Tr. 30). The ALJ found that these opinions were not persuasive because, while the

opinions were supported by the medical records, their use of the term "intense interactions" was vague (Tr. 30).  Nonetheless, and confusingly, the ALJ adopted the experts' finding that Plaintiff was only moderately limited and that he could perform simple work with the accommodations of low stress work, no hourly quotas, simple and routine task, and no tandem tasks, to account for his anxiety (Tr. 30).

After noting that the ALJ's opinion is internally inconsistent, because he found Drs. Altomari's and Toll's opinions were consistent and supported by the record but nonetheless not persuasive, Plaintiff argues that the ALJ failed to "explain how plaintiff's 'issues with anxiety' are accommodated by a low stress job with no tandem or hourly quotas" (Doc. 16, p. 5).  In particular, Plaintiff argues that the ALJ failed to explain how Plaintiff can engage in full time work when he must "completely disengage" due to panic attacks, which can be triggered by anything or nothing.  After outlining Plaintiff statements of the effects of his condition, Plaintiff states that the ALJ impermissibly minimized his panic attacks because they were not witnessed by medical providers.[3]  In response, Defendant argues that the "ALJ adequately accounted for the degree of limitation supported by the overall record in determining Plaintiff's RFC" (Doc. 17, p. 9).

The Court finds that the ALJ's RFC assessment is internally inconsistent and not well explained and supported.  First, the ALJ confusingly indicates that the agency doctors' opinions were not persuasive (because of one phrase in the opinions) but then appears to adopt those opinions in whole in determining that Plaintiff was capable of performing simple work that did not involve intense or frequent interaction with others.  Either the ALJ meant to indicate that he found the opinion persuasive but with *more* limitations than what the experts determined – while the

---

[3] The ALJ stated, in describing the medical records, that no medical records documented the symptoms plaintiff related about this panic attacks, "nor did any examiner document a witnessed panic attack in his ongoing treatment" (Tr. 30).

experts stated he should avoid "frequent and intense interactions," the ALJ found that Plaintiff should have no interaction with the public, only occasional interaction with coworkers and supervisors, and no tandem tasks. Or the ALJ meant to indicate that the opinions were not persuasive at all. If the former, then the opinion is unclear in a way that is more than just an error in opinion writing. If the later, than the ALJ's opinion must then be supported by other portions of the record.

In describing what evidence the ALJ believed supported his opinion that Plaintiff could perform a full range of work with the non-exertional limitations noted above, the ALJ summarized that there was "little" evidence of panic attacks with physical symptoms, no evidence to support negative side effects from medication, and no evidence supporting an inability to perform personal hygiene. In sum, the ALJ discredited all of Plaintiff's statements as to the disabling effects of his anxiety and related panic attacks based on the lack of documentation of these symptoms in medical records. However, an ALJ must do more than point to the lack of objective medical evidence. Grindley v. Kijakazi, 9 F.4th 622, 630 (8th Cir. 2021) ("[T]he ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." (quotation marks and citations omitted)). Moreover, there is no case authority suggesting that a claimant must *display* his disabling condition to a medical provider in order to find symptoms credible.

As outlined by the ALJ, the longitudinal picture of Plaintiff's mental impairments shows that he continued to exhibit significant psychological symptoms – bouts of laying in bed, low energy, depressed mood and affect, anxiousness, inability to maintain full time employment, and medication changes – indeed, in the Fall of 2022, his provider noted that he needed more intensive and aggressive treatment (Tr. 28). The record appears to demonstrate that while Plaintiff did not

have a mental disability in speaking, understanding, and thought process, he continued to have mental health issues that were not resolved or stabilized by the treatments provided.

Additionally, the Eighth Circuit has made clear that "the ability to do activities such as light housework . . . provides little or no support for the finding that a claimant can perform full-time competitive work." Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) ("[T]o find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." (quotation marks and citation omitted)). As in Reed, Plaintiff's ability to perform some household chore, and even provide minimal care to his aunt does not translate to the ability to perform full-time, competitive work.

The Court is mindful that upon reconsideration, the ALJ may come to the same conclusion that Plaintiff's mental health poses no barrier to performing work. See Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (noting the deference accorded the ALJ to perform further administrative proceedings). Certainly, an ALJ need not include limitations in an RFC based on evidence that he finds not credible. Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010). However, the Commissioner must tie the RFC to evidence in the record, provide a consistent assessment of the expert opinions, and square Plaintiff's non-linear treatment history with the ability to nonetheless maintain full-time employment.

\* \* \* \* \*

Accordingly, **IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this Memorandum and Order.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 14th day of January, 2026

                                                  */s/ John M. Bodenhausen*
                                                  JOHN M. BODENHAUSEN
                                                  UNITED STATES MAGISTRATE JUDGE